1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

STATE NATIONAL INSURANCE
COMPANY, INC. and ALLEGHENY
CASUALTY COMPANY,

            Plaintiff,

    v.

DIVERSIFIED CONCRETE CUTTING,
INC., a Nevada Corporation; MERCURIO
EQUIPMENT, LTD., a Nevada Limited
Liability Company; DEMO-TECH, LTD., a
Nevada Limited Liability Company;
BRANDT CHILDREN'S TRUST, a trust
created by and for Individuals residing in the
State of Nevada; KENNETH M.
MERCURIO, an Individual; DOES I
THROUGH X, Inclusive; ROE
CORPORATIONS I THROUGH X,
Inclusive,

            Defendants.

Case No. 2:18-cv-00687-GMN-EJY


**REPORT AND RECOMMENDATION**

**Re:  Motion for Default Judgment
(ECF No. 21)**

16

17

18

19

20

21

22

23

24

25

26

27

28

        Before the Court is State National Insurance Company, Inc. and Allegheny Casualty
Company's Motion for Entry of Default Judgment.  ECF No. 21.

**I.    Background**

        This case commenced on April 17, 2018 with the filing of the Complaint.  ECF No. 1.  On
May 14, 2018, Plaintiffs filed their First Amended Complaint.  ECF No. 4.  On June 19, 2018,
executed summonses were returned for each Defendant.  ECF Nos. 10-14.  On October 25, 2018,
the Clerk of the Court entered default against all Defendants.  On August 14, 2020, the instant
Motion for Entry of Default Judgment (the "Motion") was filed.  There is no certificate of service
attached to the Motion.  Nonetheless, it is true that at no time has any Defendant appeared in this
case through counsel or *pro se*.  Plaintiff State National Insurance Company, Inc. ("SNIC") seeks
damages in the amount of $1,494,765.26.  Plaintiff Allegheny Casualty Company ("ACC") seeks

1

damages in the amount of $147,985.28.  Plaintiffs also seek an award of attorney's fees based on Indemnity Agreements and NRS 18.010(1), and an award of prejudgment interest pursuant to NRS 17.130(2).

In Plaintiffs' Motion they states:

> On April 4, 2016, as an inducement to and in consideration of SNIC's issuance of surety bonds, as surety, on behalf of or at the request of one or more of the Defendants, Specialty Contracting, Diversified, Mercurio Equipment, Demo-Tech, Ken Mercurio and Brandt Trust (collectively, "SNIC Indemnitors") each executed a General Indemnity Agreement (the "SNIC Indemnity Agreement") in favor of SNIC.

ECF No. 21 at 3.[1]  Plaintiff attaches declarations to its Motion concluding that the amount alleged as damages is accurate.  Plaintiffs do not explain how the numbers they claim as damages were calculated.  However, attached to Plaintiffs' Amended Complaint (ECF No. 4) are the following documents:

| | |
|---|---|
| Exhibit A: | ACC Indemnity Agreement |
| Exhibit B: | SNIC Indemnity Agreement |
| Exhibit C: | SNIC GIA Amendment |
| Exhibit D: | ACC Contracting License Bonds |
| Exhibit E: | Demo-Tech License Bonds |
| Exhibit F: | Diversified License Bond |
| Exhibit G: | SDFH Subcontract |
| Exhibit H: | SDFH Bonds and Multiple Obligee Rider |
| Exhibit I : | White Paving Subcontract |
| Exhibit J: | White Paving Bond |
| Exhibit K: | Willows Subcontract |
| Exhibit L: | Willows Bond |
| Exhibit M: | Echowater Subcontract |
| Exhibit N: | Echowater Bonds |
| Exhibit O: | Project Neon Subcontract |
| Exhibit P: | Project Neon Bonds |
| Exhibit Q: | Project Neon Change Orders |
| Exhibit R: | Teichert Performance Bond Claim |
| Exhibit S: | Kiewit Performance Bond Claim |
| Exhibit T: | Specialty Contracting's Bankruptcy Petition |
| Exhibit U: | SNIC Demand for Security |
| Exhibit V: | SNIC Notice of Breach and Books and Records Demand |

In paragraphs 27 through 29 of the Amended Complaint, Plaintiffs allege ACC received claims on each of the Specialty Contracting License Bonds that significantly exceed the $50,000

---

[1] Specialty Contracting is not named as a defendant, but apparently filed for bankruptcy protection on January 11, 2018.

2

penal sum of each of the Specialty Contracting License Bond; ACC received a claim on the Demo-Tech License Bond in an amount exceeding the $12,500 penal sum thereof, and ACC received claims on the Diversified License Bond that greatly exceed the $20,000 penal sum thereof.  In paragraph 32, Plaintiffs allege ACC received a $2,271.75 bond claim on the Willows Bond.  In paragraph 34, Plaintiffs state:

> By letter dated December 11, 2017 and February 9, 2018, Teichert declared Diversified in default of the Echowater subcontract, terminated Diversified's right to proceed with the bonded scope of work and asserted a claim against Echowater Bonds (the "Teichert Performance Bond Claim"). In the Teichert Performance Bond Claim, Teichert asserted it had received notice from Laborers Trust Funds (the "Labor Fund Claims") and subcontractors/vendors (the "Vendor Claims") that Diversified was delinquent in its fringe benefit and subcontractor/vendor payments, and that Diversified had failed to remedy its payment the defaults. Teichert further asserted that Sacramento Sanitation is requiring that certain repair work be performed by Diversified due to the failure of a sealant that was used in saw cutting joints. Additionally, Teichert informed SNIC that it had been served with a Notice of Levy from the IRS related to Echowater Subcontract funds in the amount of $551,310.38 … .

In paragraphs 38 and 39, Plaintiffs' alleged:

> 38. By letter dated January 30, 2018, SNIC sent correspondence to the SNIC Indemnitors in connection with the enforcement of its rights under the SNIC Indemnity Agreement, wherein, pursuant to Paragraph 12 of the SNIC Indemnity Agreement, SNIC demanded that each indemnitor satisfy their joint and several obligations to immediately obtain the full and complete discharge of SNIC from any and all Bonds currently in force issued by SNIC on behalf of Diversified and Specialty Contracting (the "Demand Security"). … In the Demand for Security, SNIC further demanded, pursuant to Paragraph 6 of the SNIC Indemnity Agreement, that in the event the SNIC Indemnitors failed to immediately obtain discharge of SNIC from all such bonds, that each Indemnitor honor its joint and several obligations to place SNIC in immediately available cash collateral funds in the amount of Three Million Dollars ($3,000,000), representing SNIC's best estimate of its then outstanding exposure under bonds issued on behalf of Diversified and Specialty Contracting.

> 39.  By letter dated February 5, 2018, following the SNIC Indemnitors collective failure to respond to the Demand for Security, SNIC sent correspondence to the SNIC Indemnitors notifying them that they were each in breach of their obligations under the SNIC Indemnity Agreement and further made a request pursuant to Paragraph 12.9 of the SNIC Indemnity Agreement to examine and copy the books, records and accounts of the SNIC Indemnitors (the "Notice of Breach and Books and Records Demand").

Plaintiffs' Causes of Action are as follows:  Contractual Indemnity Against the ACC Indemnitors; Contractual Indemnity Against the SNIC Indemnitors; Equitable Indemnity Against

All Defendants; Declaratory Relief Against the ACC Indemnitors; Declaratory Relief Against the SNIC Indemnitors; SNIC for *Quia Timet*; and, Specific Performance Against the SNIC Indemnitors.

## II.    DISCUSSION

### A.    The Default Judgment Standard.

Rule 55(b) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgment when the Clerk of Court previously entered default based upon a defendant's failure to answer and defend. *OCWEN Loan Servicing, LLC v. Operture, Inc.*, Case No. 17-cv-01026, 2018 WL 1100904, at *1 (D. Nev. February 12, 2018). A process server served the Summons and Complaint upon Defendants Diversified, Mercurio Equipment, and Demo-Tech through their agent for service of process, Drinkwater Law Offices on May 23, 2018. On May 29, 2018, a process server personally served the Summons and Complaint upon Mr. Mercurio and Brandt Trust. Defendants made no appearance or attempt to respond to Plaintiffs' Amended Complaint and the Clerk's Default was entered on October 25, 2018.

Failure to timely answer a properly served complaint is an appropriate basis upon which entry of default judgment may lie. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). This, however, does not automatically entitle Plaintiffs "to a court-ordered judgment." *PepsiCo. Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002). Although, the Court must accept all well-pleaded facts in Plaintiffs' Complaint as true, the Court is not required to consider any conclusions of law or facts that fail the well-pleaded standard. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, the Court need not accept the facts establishing the amount of damages as true simply based on the pleadings. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

Courts generally disfavor default judgments because "cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Thus, there are seven factors that a lower court, in its discretion, may generally consider when deciding whether to grant default judgment. *Id*. at 1471-72 (citing 6 MOORE'S FEDERAL PRACTICE § 55-05, at 55-24 to 55-26). These factors include:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*[2]

        B.      Application Of The *Eitel* Factors To This Case.

             *1.*      *Factor One – The Possibility of Prejudice to Plaintiffs.*

As stated, the Clerk of Court properly entered default against Defendants who failed to appear or respond to Plaintiffs' Amended Complaint. However, Plaintiffs did not file a certificate of service indicating they served Defendants with their Motion. Thus, while this and all other *Eitel* factors generally favor default in this case (*see* below), the Court recommends the Motion be denied without prejudice at this time. It is further recommended that Plaintiffs be ordered to serve their Motion by mailing the same to each Defendant's last known address (whether personal or a registered agent). Once Plaintiffs serve their Motion on Defendants by mail, Plaintiffs shall be entitled to renew their Motion for Default Judgment.

             *2.*      *Factors Two, Three, and Five – The Merits of Plaintiffs' Substantive Claims, the Sufficiency of the Complaint, and the Possibility of a Question of Material Fact.*

Under the well-pleaded complaint rule, Plaintiffs sufficiently state claims for recovery of damages from Defendants. Fed. R. Civ. P. 8. Thus, the third *Eitel* factor favors entry of default judgment.

The merits of Plaintiffs' claims (the second *Eitel* factor), when considered together with the possibility of questions of material fact (the fifth *Eitel* factor), demonstrate Plaintiffs' claims do not leave questions of material fact to be decided. The claims are supported by substantial, unequivocal, documentation. Thus, *Eitel* factors two, three, and five favor granting default judgment.

---

[2]    In addition to these seven factors, the Court has the duty to ensure Defendants were properly served and are properly before the Court. *DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 877-78 (N.D. Cal. 2012). Here, as stated, the Court finds that summonses were properly issued, Defendants were properly served, Defendants failed to answer the Amended Complaint, personal jurisdiction is properly exercised over these Defendants, and that default of Defendants was properly entered by the Clerk of Court.

3. *The remaining Eitel elements—the sum of money at stake in the action, whether the default was due to excusable neglect, and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits—lead to granting Plaintiffs' Motion.*

Obviously, Defendants failed to appear or participate in any manner in this dispute. Defendants have not argued, nor is there any evidence to suggest, that their failure to participate is the result of excusable neglect. Whether Defendants can satisfy the judgment is unknown, but deterring others from acting in the same manner as Defendants weighs heavily in favor of the award requested. Finally, recouping fees, costs, and interest puts Plaintiffs in virtually the same position it would have been in had Defendants not wrongfully failed to fulfill their respective contractual obligations.

All the *Eitel* factors weigh in favor of granting Plaintiffs' Motion for Default Judgment within the exception of the general and overall public policy favoring decisions on the merits of a case. Under the circumstances present here, this is not a good reason to deny Plaintiffs' Motion.

C.    The Indemnity Agreements Provide That Plaintiffs Are Entitled To Their Attorneys' Fees.

As shown in the exhibits identified above and reviewed by the Court, Defendants Diversified, Mercurio Equipment, Demo-Tech, Ken Mercurio, and Brandt Trust each executed a General Indemnity Agreement in favor of SNIC. Moreover, on May 20, 2016, Ken Mercurio, in his capacity as owner of Diversified, executed an Amendment to General Indemnity Agreement adding Diversified as an additional principal under the SNIC Indemnity Agreement. Also shown through exhibits and reviewed by the Court, Defendants executed a General Indemnity Agreement in favor of International Fidelity Insurance Company and ACC on November 25, 2015. The SNIC Indemnity Agreement and the ACC Indemnity Agreement provide that the Indemnitors are liable for SNIC's and ACC's attorneys' fees respectively. NRS 18.010(1) allows for payment of attorneys' fees when governed by the parties' agreement, so long as such payment is not restrained by law. The amount of attorney's fees claimed in this matter are determined to be reasonable. Therefore, the Court finds an award of attorney's fees is appropriate in this matter.

D.    Plaintiffs Are Entitled To Prejudgment Interest.

NRS 17.130 states:

When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest only from the time of the entry of the judgment until satisfied, at a rate equal to the prime rate at the largest bank in Nevada as ascertained by the Commissioner of Financial Institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment, plus 2 percent. The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied.

In the present case, the Indemnity Agreements do not expressly provide for pre-judgment interest. However, Plaintiffs are entitled to such interest in accordance with NRS 17.130.

## III.    CONCLUSION

The discussion above demonstrates that Defendants have not participated in this case. However, Defendants were not served with Plaintiffs' Motion for Entry of Default. This concerns the Court sufficiently to recommend denying the Motion for Entry of Default without prejudice to allow for service of the Motion. Once Plaintiffs serve the Motion on Defendants by mail, it is recommended that Plaintiffs shall be entitled to renew their Motion.

## IV.    RECOMMENDATIONS

Accordingly, and for each and all of the reasons stated above, the Court HEREBY RECOMMENDS that Plaintiffs' Motion for Default Judgment (ECF No. 21) be DENIED without prejudice.

IT IS FURTHER RECOMMENDED that Plaintiffs be ordered to serve a copy of their Motion for Entry of Default Judgment by mailing the same to the last known address (whether personal or a registered agent) to each Defendant.

IT IS FURTHER RECOMMENDED that once Plaintiffs serve their Motion for Entry of Default Judgment on each Defendant, Plaintiffs renew their Motion by refiling the same.

Dated this 10th day of December, 2020

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).